UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHELLE D.,

             Plaintiff,

       v.

KILOLO KIJAKAZI,

           Defendant.*

No. 21 CV 1561

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Michelle D.[1] appeals the Social Security Commissioner's denial of her application for disability insurance benefits. Because substantial evidence supports the administrative law judge's decision, I affirm.

## I. Legal Standards

The Appeals Council declined review, making the ALJ's decision final under the Social Security Act, 42 U.S.C. § 405(g). *See Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021). Judicial review of Social Security decisions is deferential—I must affirm if the ALJ applied the law correctly and supported her decision with substantial evidence. *See Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). "Substantial evidence is not a high threshold." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). It means "such relevant

---

* Under Federal Rule of Civil Procedure 25(d), Acting Social Security Commissioner Kilolo Kijakazi replaces former Commissioner Andrew Saul as the defendant in this case.

[1] I refer to plaintiff by her first name and the first initial of her last name to comply with Internal Operating Procedure 22.

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## II.   Background

In May 2018, plaintiff applied for disability insurance benefits, alleging disability starting September 6, 2017. R. 13.[2] The Social Security Administration denied her application—initially and upon reconsideration—before plaintiff appeared for a hearing before an ALJ in February 2020. *Id*. The next month, the ALJ issued an unfavorable decision, concluding that plaintiff was not disabled during the relevant period. R. 13–28.

The ALJ employed the agency's a five-step sequential analysis to determine plaintiff's disability status. *See* 20 C.F.R. § 404.1520. In this process, the ALJ evaluates: (1) whether the claimant is engaging in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant has an impairment the Commissioner considers conclusively disabling; (4) if not, whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any work in the national economy. *Id*. The claimant bears the burden of proving disability at steps one through four, but the burden shifts to the Commissioner at step five. *See Mandrell*, 25 F.4th at 516.

---

[2] The administrative record, cited as R., can be found at [10-1]. Bracketed numbers refer to entries on the district court docket. Other than in citations to the administrative record, referenced page numbers are taken from the CM/ECF header placed at the top of filings.

Plaintiff takes no issue with the ALJ's findings at the first three steps. The ALJ found that plaintiff had not engaged in substantial gainful activity since September 6, 2017, and had severe impairments of obesity, fibromyalgia, and degenerative disc disease of the cervical and lumbar spine. R. 15–18. The ALJ also determined that plaintiff did not have an impairment or combination of impairments that met or equaled a conclusively disabling impairment. R. 18–19.

The ALJ then determined plaintiff's residual functional capacity to complete steps four and five. R. 19–26; *see* 20 C.F.R. § 404.1520(e). A claimant's RFC represents "the *most* physical and mental work a claimant can do on a sustained basis despite her limitations." *Poole v. Kijakazi*, 28 F.4th 792, 2022 WL 765845 at *2 (7th Cir. 2022) (quoting *Mandrell*, 25 F.4th at 516). To assess a claimant's RFC, the ALJ considers: (1) all the relevant medical and non-medical evidence; (2) all the claimant's medically determinable limitations, including non-severe ones; and (3) the claimant's physical and mental limitations. 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184 at *2–7 (July 2, 1996).

The ALJ found that plaintiff had the RFC to perform light work. R. 19; *see also* 20 C.F.R. § 404.1567(b). The ALJ included several exceptions, finding that plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; tolerate occasional exposure to and work around vibration and hazards; but could never climb ladders, ropes, or scaffolds. R. 19.

The ALJ detailed plaintiff's reports of pain and limitations as expressed in her disability application, during various medical exams, and in hearing testimony.

3

R. 19–21. The ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 21.

In explaining her conclusion, the ALJ acknowledged that medical evidence indicated a history of plaintiff complaining of chronic pain, with a diagnosis of fibromyalgia as early as 2012, as well as persistent complaints of chronic neck and low back pain. R. 21–22. But the ALJ concluded that plaintiff's characterization of severe pain and extreme physical limitations were inconsistent with the preponderance of the underlying medical evidence. R. 22. For example, while some medical records described plaintiff as appearing "uncomfortable" during examinations, various other providers described plaintiff as appearing in "mild distress" or "comfortable" or generally in "no acute distress." *Id*. The ALJ acknowledged that pain is a fluctuating and subjective symptom but determined that the underlying medical record (which, on balance, described plaintiff's pain symptoms as "well managed with routine conservative pharmacological modalities"), cast doubt on plaintiff's allegations of disabling severe pain. *Id*.

Further, while objective diagnostic imaging showed abnormal underlying structural pathophysiology, "there [was] no significant longitudinal worsening with treatment to corroborate the claimant's allegations of an inability to function on an on-going basis within the parameters of the residual functional capacity as stated herein." *Id*. And although MRIs from before the alleged onset date showed mild

4

cervical stenosis and minimal spondylotic changes and degenerative disc disease in the lower lumbar spine, the ALJ found "no definitive evidence of a level of anatomical deformity to corroborate the claimant's clinical symptoms of severity and corresponding extreme functional limitations." R. 22. Plaintiff points to nothing in the record to contradict the ALJ's observation about the absence of definitive anatomical evidence.

The ALJ considered physical examinations that identified intermittent abnormalities, including reduced range of motion of the lumbar and cervical spine, tenderness, and trigger points. R. 22. Yet the ALJ found that the majority of physical exams by multiple providers documented normal gait and other normal findings. R. 23. Physical exams in the record after the alleged onset date, for instance, documented unremarkable findings including full motor strength in all extremities, normal range of motion of the neck and back, no neurologic deficits, and ambulation without assistance. *Id*. Overall, the ALJ determined, plaintiff did not have "any profound particular symptomatology or progressive findings on physical examination consistent with her allegations of extreme functional limitation." *Id*.

Moreover, the ALJ found plaintiff's conservative course of treatment and failure to explore all recommended treatment options inconsistent with her allegations of severe pain and extreme limitation. R. 23. The ALJ highlighted evidence, for example, that plaintiff did not pursue recommended treatment options like injections, low-intensity exercise programs, or a return to physical therapy. *Id*.[3]

---

[3] Plaintiff says the ALJ cherry-picked evidence because she received epidural injections in November 2016. [21] at 3 (citing R. 317–18). The ALJ, on the other hand, relied on medical

The ALJ acknowledged plaintiff's testimony that she did not return to treatment due to limited finances and insurance-coverage issues. R. 23–24. But the ALJ also pointed to plaintiff's other testimony that she had enough disposable income to smoke up to a pack of cigarettes a day and go to restaurants, maintained insurance coverage through her husband, and was able travel to Florida for two months every winter. R. 24. While not dispositive, the ALJ concluded that plaintiff's failure to offer a reasonable explanation for why she failed to make any reasonable effort to seek out low-cost alternatives cast doubt on the legitimacy of her allegations of extreme pain. *Id*. The ALJ also noted a "wide divergence" between plaintiff's testimony about her levels of daily activity and her allegations of pain and functional limitations, which raised a "reasonable question as to whether the claimant is as limited as she alleges." *Id*.

Next, the ALJ assessed medical opinions in the record. The ALJ found state agency medical opinions persuasive, while deeming the opinion of plaintiff's rheumatologist, Dr. Saba Ahmed, unpersuasive. R. 25. In June 2018, Ahmed completed a questionnaire titled "Fibromyalgia Medical Source Statement." R. 409–12. In it, Ahmed opined that plaintiff could sit, stand, or walk for less than 2 hours in an 8-hour workday, required breaks "very often," and would miss approximately four days of work per month due to her symptoms. R. 410–12. Further, Ahmed found that

---

records from late-September 2017 noting that plaintiff declined to pursue recommended injections. *See* R. 390. Plaintiff does not dispute the accuracy of the September 2017 records. The ALJ's finding that plaintiff's refusal to pursue recommended injections after the onset date undermined her allegations regarding pain and functional limitations is consistent with those records. R. 23.

plaintiff could walk one block without rest or severe pain; needed a job that permitted her to shift at will; could sit five to ten minutes and stand ten to 15 minutes at a time; could occasionally lift ten pounds, rarely lift 20 pounds, and never lift 50 pounds; and needed to walk around for up to five minutes every 15 to 20 minutes. R. 410–11. Asked to identify the clinical findings that showed plaintiff's medical impairments, Ahmed appears to have answered: trigger points, painful range of motion, C-Spine x-ray degenerative joint disease/degenerative disc disease, and MRI lumbar spine—degenerative disc disease, foraminal stenosis. R. 409.

After detailing these findings, the ALJ rejected Ahmed's opinion for several reasons. R. 25–26. First, the ALJ wrote, Ahmed lacked "specialized knowledge regarding the rules and definitions with respect to Social Security disability." R. 25. Second, the ALJ found Ahmed's opinion to be "largely based upon the claimant's subjective complaints of pain, which as discussed above are disproportionate to the underlying objective evidence of record." *Id*. As such, the ALJ determined that Ahmed's "extreme functional limits appear to be sympathetic to the claimant instead of based on an independent review of [her] clinical objective findings." *Id*. Third, the ALJ characterized Ahmed's opinion as "outdated" and did not account for plaintiff's "subsequent medical treatment and clinical presentation which as discussed above demonstrates minimal intermittent clinical abnormalities without evidence of deficits in gait or motor function and stable pathology on imaging." R. 25–26.

In accordance with her RFC finding, the ALJ adopted the vocational expert's conclusion that plaintiff could not perform past relevant work as a home health aide.

R. 26. Based on the vocational expert's testimony, the ALJ concluded that plaintiff could make a successful adjustment to other work that exists in significant numbers in the national economy, including work as a cashier, sales attendant, or marker. R. 27. Accordingly, the ALJ concluded that plaintiff had not been under disability during the relevant period. *Id.* The Appeals Council declined plaintiff's request to review the ALJ's decision. R. 1. This suit followed.

## III.  Analysis

An ALJ need not address every piece of evidence, but she "must provide a 'logical bridge' between the evidence and [her] conclusions." *Butler*, 4 F.4th at 501 (citation omitted). To ensure meaningful judicial review, an ALJ must "articulate adequately the bases for [her] conclusions," to demonstrate that she considered key evidence and to permit the court "to trace the path of [her] reasoning." *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002) (citation omitted).

Plaintiff here argues that the ALJ erred in determining her RFC because the ALJ (1) failed to give proper weight to Ahmed's opinion, and (2) cherry-picked evidence to dismiss plaintiff's subjective complaints of pain. She also argues that the structure of the Social Security Administration—with a single head, removable only for cause—violates the Constitution's separation of powers.

### A.  Medical Opinions

Plaintiff contends that the ALJ erred in deeming Ahmed's opinions unpersuasive because the ALJ did not adequately consider the length of the treatment relationship, Ahmed's specialized knowledge, or how certain objective

8

medical evidence supported Ahmed's opinion. And because Ahmed offered a "treating source opinion," says plaintiff, the ALJ needed to offer good reasons for dismissing Ahmed's opinion.

The ALJ did not err in rejecting Ahmed's June 2018 opinion as unpersuasive. For starters, the treating-source rule does not apply to plaintiff's claim. For claims filed before March 27, 2017, an ALJ "should expressly analyze treating physicians' opinions using the § 404.1527(c)(2) factors and minimally articulate their reasoning when giving a treating physician's opinion less than controlling weight." *Grotts v. Kijakazi*, 27 F.4th 1273 (7th Cir. 2022). But because plaintiff filed her claim in 2018, the regulation applicable to her claim no longer requires an ALJ to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion. *See* 20 C.F.R. § 404.1520c(a); *see also* Social Security Administration, *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017).

Under the applicable regulation, ALJs evaluate the persuasiveness of each medical opinion based on certain factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) specialization; (5) other factors, including the source's familiarity with other evidence in the claim or an understanding of Social Security disability policies and requirements. 20 C.F.R. § 404.1520c(c)(1)–(5). The ALJ must explain only how she considered the first two factors—supportability and consistency—but need not explain her consideration of the other factors. *Id.* § 404.1520c(b)(2). Supportability measures how much the

9

objective medical evidence and supporting explanations presented by a medical source support the opinion. *Id.* § 404.1520c(c)(1). And consistency assesses how a medical opinion squares with other evidence in the record. *Id.* § 404.1520c(c)(2).

The ALJ articulated how she considered both required factors here. The ALJ determined that Ahmed's opinions lacked support because they were "largely based upon [plaintiff's] subjective complaints of pain." R. 25. The ALJ referred to her earlier analysis explaining why the underlying objective medical evidence in the record did not support such complaints. *See Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (proper to read an ALJ's decision holistically). This, in turn, led the ALJ to conclude that Ahmed's "extreme functional limits appear to be sympathetic to the claimant instead of based on an independent review of [her] clinical objective findings." R. 25. In other words, the ALJ expressly considered Ahmed's clinical findings but determined that Ahmed relied more on plaintiff's subjective complaints than on her own objective medical findings to reach her conclusions. *See Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020) (reasonable to discount medical opinion that relies on subjective complaints ALJ has reasonably rejected as not credible).

The ALJ also determined that Ahmed's opinions were inconsistent with other evidence in the record. Plaintiff takes issue with the ALJ's characterization of Ahmed's opinion as "outdated," because the opinion post-dated plaintiff's alleged onset date. *See, e.g.*, [13] at 7. But when read in proper context, that is not what the ALJ meant when she used the term. Instead, the ALJ found the opinion "outdated" because post-June 2018 medical evidence did not support Ahmed's findings. The

subsequent medical evidence demonstrated "minimal intermittent clinical abnormalities without evidence of deficits in gait or motor function and stable pathology on imaging." R. 25–26.[4]

In sum, the regulation required the ALJ to articulate why she found Ahmed's medical opinion unsupported and inconsistent with the record, and no more. *See* 20 C.F.R. § 404.1520c(b)(2). Because the ALJ did just that, she did not err in dismissing Ahmed's opinion.[5]

## B.    Credibility Assessment

Plaintiff also contends that the ALJ's assessment of her credibility was patently wrong. This too falls short because the ALJ's findings are supported by substantial evidence.

Courts will uphold an ALJ's credibility determination unless it is "patently wrong." *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (citation omitted). To assess credibility, "ALJs should 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and ... whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* (quoting SSR 16-3p, 2017 WL 5180304 at *11 (Oct. 25, 2017). On review, I ask whether the ALJ built

---

[4] The ALJ also explained that Ahmed's lack of "specialized knowledge" of Social Security disability rules played a role in finding Ahmed's opinions unpersuasive. R. 25. This is a proper consideration under the regulation. *See* 20 C.F.R. § 404.1520c(c)(5).

[5] Because the ALJ did not err in rejecting Ahmed's findings, plaintiff's related argument that the ALJ erred in failing to ask the vocational expert hypotheticals about Ahmed's findings also fails. *See* [13] at 10–11.

an "accurate and logical bridge" between the evidence and her conclusion. *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). An ALJ need not mention every piece of evidence in the record, *see Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021), but she must provide enough for the court to trace the path of her reasoning. *See Scott*, 297 F.3d at 595.

Plaintiff argues that the ALJ ignored evidence favorable to her and selectively picked evidence to deny her claim. Plaintiff relies on treatment notes indicating her discomfort during exams and the ALJs' observation during her hearing that plaintiff seemed "quite uncomfortable today." [13] at 12 (citing R. 38). Plaintiff says the ALJ cited findings of "no acute distress" but ignored other findings of pain all over, tender spots, abnormal gait, and reduced range of motion.

The ALJ reasonably determined that objective medical evidence did not substantiate plaintiff's allegations regarding the severity and intensity of her limitations. *See* 20 C.F.R. § 404.1529(c)(2), (3). "Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts*, 27 F.4th 1273. The ALJ analyzed plaintiff's assertions of pain and limitations from her application for benefits and her hearing testimony. R. 19–21. The ALJ did not ignore medical records documenting plaintiff's discomfort during examinations, but rather attached greater weight to other medical records where other providers described plaintiff as appearing in "mild distress" or "comfortable" or generally in "no acute distress." R. 22. The ALJ considered evidence documenting abnormal findings regarding range of motion of the

12

lumbar and cervical spine, tenderness, and trigger points, but found that the majority of physical exams by multiple providers documented normal findings. R. 23. On top of examination findings, the ALJ noted how objective imaging, and plaintiff's ongoing conservative treatment (and failure to follow treatment recommendations), undermined plaintiff's subjective claims. R. 23–24. To the extent that plaintiff argues that the ALJ did not give enough weight to certain records, I cannot "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [my] judgment for that of the Commissioner." *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (citation omitted).

Plaintiff also argues that the ALJ failed to assess her strong work record in determining her credibility. But while work history "bolsters her credibility" it is only "one factor among many, and it is not dispositive, nor does it operate to negate other evidence that supports an ALJ's adverse credibility finding." *Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022) (citation and quotation marks omitted); *see also Summers v. Berryhill*, 864 F.3d 523, 528-29 (7th Cir. 2017) (failing to expressly discuss work history not reversible error). Nothing about plaintiff's work history negates the evidence supporting the ALJ's conclusion.

## C.    Separation of Powers

Finally, plaintiff contends that the Social Security Act limits the President's removal authority in violation of the separation of powers. In *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), the Supreme Court held that the CFPB's leadership by a single individual removable only for cause

violated the separation of powers. *Id*. 2197. The structure of the Social Security Administration mirrors the (former) CFPB—it vests leadership in a single individual (the Commissioner) for a six-year term, removable only for cause. *See* 42 U.S.C. § 902(a)(1), (3). Accordingly, plaintiff says she was deprived of a valid administrative process because former Commissioner Andrew Saul lacked constitutional authority to deny her claim. The current Acting Commissioner, for her part, concedes that 42 U.S.C. § 902(a)(3) violates the separation of powers but argues that plaintiff has not shown how the removal restriction in section 902(a)(3) caused her any harm.

I agree. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the Supreme Court held that the Federal Housing Finance Administration's structure also violated the separation of powers. *See id*. at 1783 ("The Recovery Act's for-cause restriction on the President's removal authority violates the separation of powers."). But the Court rejected the idea that an unconstitutional restriction on the president's removal authority also meant that a lawfully appointed director lacked authority. *Id*. at 1787 ("Although the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office[, and therefore] no reason to regard any of the actions taken by the FHFA … as void."). As such, there was "no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office." *Id*. at 1788.

Putting a finer point on things, Justice Kagan wrote that the Court's remedial holding "ensures that actions the President supports—which would have gone

14

forward whatever his removal power—will remain in place." *Id*. at 1801–02 (Kagan, J., concurring in part and concurring in the judgment). And of particular note here, Justice Kagan observed:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice. Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block. .... But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. That makes sense.

*Id*. at 1802 (citation omitted).

Under *Seila Law* and *Collins*, the Social Security Administration's structure likely violates the separation of powers. But this provides plaintiff no relief. Former Commissioner Saul was properly appointed. So was Acting Commissioner Kilolo Kijakazi. Both had the lawful authority to deny plaintiff's application at all points in the process, and there's nothing to suggest that section 902(a)(3)'s limits on the President's removal authority had any bearing on this case.

## IV. Conclusion

Plaintiff's motion for summary judgment, [12], is denied. The ALJ's decision is affirmed. Enter judgment and terminate case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: March 31, 2022